UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER ESGET,<br><br>    Plaintiff,<br><br>    v.<br><br>TCM FINANCIAL SERVICES LLC; and DOES 1 to 10, inclusive,<br><br>    Defendants.<br>_____/ | **Case No. 1:11-cv-00062-AWI-BAM**<br><br>**FINDINGS AND RECOMMENDATIONS GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |

Currently before the Court is Plaintiff's Motion for Default Judgment. (Doc. 32.) The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. Following a hearing and supplemental briefing, the matter was taken under submission pursuant to Local Rule 230(g). For the reasons that follow, the Court recommends Plaintiff's Motion for Default Judgment be GRANTED IN PART.

**RELEVANT PROCEDURAL BACKGROUND**

On January 12, 2011, Plaintiff filed a complaint against Defendant asserting violations of the Fair Debt Collection Practices Act and the Rosenthal Fair Debt Collection Practices Act. (Doc. 1.) A summons was issued to Defendant that same date. (Doc. 4.)

1

1  On April 13, 2011, Plaintiff filed a Declaration of Service regarding service of the summons
2 and complaint and related documents.  The proof of service stated that process server Livingston A.
3 Beckford of DDS Legal Support served Javier Jimenez, a "principal" of TCM Financial Services LLC,
4 by way of substitute service on "RICHARD (DOE)," the person apparently in charge, at 5900 S.
5 Eastern Avenue in Commerce, California on March 22, 2011.  The following day, on March 23, 2011,
6 Pam Miller of DDS Legal Support served the same documents via United States Mail to "Javier
7 Jimenez, Principal, 5900 S. Eastern Ave., Commerce, CA 900401."  (Doc. 6 at 2.)

8  On May 5, 2011, the Clerk of the Court entered default against Defendant TCM Financial
9 Services LLC, following Plaintiff's request.  (Docs. 7-8.)  On August 17, 2011, Plaintiff filed a
10 motion for default judgment with this Court.  (Doc. 10.)  On September 13, 2011, the Court denied
11 Plaintiff's motion for default judgment.  (Doc. 14.)  The grounds for the Court's denial of Plaintiff's
12 motion for default judgment were as follows: (1) a suite number was not provided for the S. Eastern
13 Avenue address and, as such, the Court had reservations regarding the sufficiency of Plaintiff's
14 substitute service; and (2) The California Secretary of State's website provided Defendant's address
15 was 6766 Passions Blvd., Suite C, Pico Rivera, California 90660 - an address which was not served.
16 (Doc. 14.).  The Court ordered Plaintiff to serve the complaint and summons on *both complete*
17 *addresses* for Defendant no later than September 30, 2011.

18  On October 3, 2011, Plaintiff filed another motion for default judgment.  (Doc. 16.)  The proof
19 of service attached to the motion for default judgment indicated service of the motion was made to the
20 two addresses referenced in the September 13, 2011 Order.  There was no indication, however, that the
21 summons and complaint were served at both addresses.  (Doc. 16.)  Accordingly, on January 4, 2012,
22 the Court ruled that Plaintiff had failed to comply with the September 13, 2011 Order, and denied
23 Plaintiff's motion for default judgment.  (Doc. 20.)  The January 4, 2012 Order instructed Plaintiff to
24 provide the Court with a proof of service of the summons and complaint on Defendant.  The Court
25 further ordered Plaintiff to file and properly serve any amended motion for default judgment, to be
26 noticed and heard before the undersigned, no later than February 17, 2012.  (Doc. 20.)

27  On March 6, 2012, Plaintiff submitted a proof of service of the summons and complaint.  (Doc.
28 21.)  The proof of service stated that on February 24, 2012, process server Jimmy Vasquez of DDS

2

1  Legal Support served Javier Jimenez, Vice President of TCM Financial Services LLC, by way of
2  substitute service on "JOHN DOE," a manager apparently in charge, at 5900 S. Eastern Avenue, Suite
3  130, Commerce, California 90040. (Doc. 21.) On February 27, 2012, Monica Figueroa of DDS Legal
4  Support served the same documents via United States Mail to "Javier Jimenez, Vice President, 5900 S.
5  Eastern Ave., Ste 130, Commerce, CA 90040." (Doc. 21.)

6  On April 20, 2012, the Clerk of the Court entered default against Defendant, following
7  Plaintiff's request. (Doc. 22, 23.) On May 11, 2012, Plaintiff filed her third Motion for Default
8  Judgment. (Doc. 26.) The Court denied this Motion for default judgment because "[t]he proof of
9  service of the summons and complaint submitted after the Court's second denial of Plaintiff's request
10 for default [did] not indicate the Passions Boulevard address was served." (Doc. 29, 3: 15-17.)

11 Currently before the Court is Defendant's fourth Motion for Default Judgment. (Doc. 32.)
12 Plaintiff's fourth Motion for Default Judgment describes variety of service attempts that took place
13 prior to preceding motions for default judgment, however, these service attempts were never
14 mentioned in prior motions. (Doc. 32.) Due to these discrepancies and the Court's continued
15 concerns as to the adequacy of service, the Court requested supplemental briefing. (Doc. 36.)
16 Specifically, the court requested:

> (1) A detailed explanation of Plaintiffs attempts to serve the Passions Boulevard address, including an explanation for why these service attempts were not discussed in Plaintiffs third motion for default judgment, supported by the declarations of Plaintiff's counsel and Plaintiff's process server; (2) Plaintiff's explanation, supported by the declaration of Plaintiff's counsel, for why Defendant's actual notice of the lawsuit was not raised in Plaintiff's third motion for default judgment; and (3) A discussion as to whether Plaintiff's attempts to serve the Passions Boulevard address constitute reasonable diligence, supported by citations to case authority.

(Doc. 36.) Plaintiff filed her supplemental briefing on May 31, 2013, and the Court took the matter under submission. (Doc. 37.)

**DISCUSSION**

**A.   Legal Standard**

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a plaintiff can apply to the court for a default judgment against a defendant that has failed to plead or otherwise defend against the action.

3

FED. R. CIV. P. 55(b)(2). "Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Thus, "[a]t the time of entry of default, the facts alleged by the plaintiff in the complaint are deemed admitted." 10 J. Moore, MOORE'S FEDERAL PRACTICE § 55.11 (3d ed. 2000).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)); *accord DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law" (citation and quotation marks omitted)).

**B. Service of Process**

As a preliminary matter, the Court must first "assess the adequacy of the service of process on the party against whom default is requested." *Bd. of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Dec. 29, 2000). Service may be affected upon a corporation in the United States "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." FED. R. CIV. P. 4(h)(1)(B).

Plaintiff has submitted evidence that she has attempted to serve Defendant at the Passions Boulevard address nine times between March 8, 2011 and March 1, 2012. (Doc. 37, Attach. 4.) Plaintiff has submitted evidence indicating Defendant was successfully served at the Eastern Avenue Address on two occasions. (Doc. 37, Attach. 4.) Finally, Plaintiff represents Defendant had actual notice of this lawsuit. Plaintiff's counsel's declaration states that after serving Defendant at the

Eastern Avenue address, "a representative of Defendant, who identified himself as Ron Brown, called me at my place of business to discuss this action. Ron Brown stated that he received Plaintiff's lawsuit and requested brief extension to respond to Plaintiff's complaint and discuss settlement." (Doc. 37, Attach. 4.)  This was Plaintiff's one and only communication with Defendant.

Despite the Court's repeated concerns regarding service of process, Plaintiff states that attempts to serve the Passions Boulevard address and evidence of Defendant's actual notice were not included in Plaintiff's previous motions for default judgment because Plaintiff believed service at the Eastern Avenue address was sufficient.  (Doc. 37.)  Whether Plaintiff "believed" she had successfully served the Eastern Avenue address is irrelevant.  The Court, on three occasions, informed Plaintiff that service attempts at the Passions Boulevard address was necessary.  Moreover, Plaintiff's omission of evidence demonstrating Defendant's actual notice of this lawsuit based on this same misguided belief is confounding.  Nevertheless, the Court accepts Plaintiff's counsel's representations concerning service at the Passions Boulevard address and Defendant's actual notice of this lawsuit.

Service of process is not limited solely to officially designated officers, managing agents, or agents appointed by law for the receipt of process. In the Ninth Circuit, the service requirements of Rule 4(h) are liberally construed to achieve its underlying purpose of giving a party notice of a claim against it." *Grand Canyon Resort Corp. v. Drive–Yourself Tours, Inc*., 2006 WL 1722314, * 3 (D.Ariz. June 22, 2006) (citing, among others, *Direct Mail,* 840 F.2d 685, 688-89 (9th Cir. 1988); *Chan v. Soc. 'y Expeditions, Inc*., 39 F.3d 1398, 1404 (9th Cir.1994)).  "Thus, the service can be made 'upon a representative so integrated with the organization that he will know what to do with the papers. Generally, service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service.'" *Direct Mail,* 840 F.2d 685, 688-89 (9th Cir. 1988) (citing *Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa,* 428 F.Supp. 1237, 1251 (S.D.N.Y. 1977

This Court finds Plaintiff's service on Defendant was proper.  While the California Secretary of State lists the Passions Boulevard address for Defendant, substantial evidence indicates the Eastern Avenue address is Defendant's actual address.  (Doc. 37, fn. 3.)  Indeed, Plaintiff appears to have successfully served Defendant by serving an individual apparently in charge at the Eastern Avenue

address on two separate occasions. (Doc. 37, Attach. 4.)  The Court required Plaintiff to attempt service on the Passions Boulevard address, and the evidence currently before the Court indicates Plaintiff has attempted to do so on several occasions. (Doc. 37, Attach. 4.)   Plaintiff has demonstrated due diligence in attempting to serve the Passions Boulevard address.

Moreover, Plaintiff's evidence of Defendant's actual notice of this lawsuit demonstrates that service was proper under Rule 4.  An individual named Ron Brown, who held himself out as a representative of Defendant, contacted Plaintiff's counsel and indicated he had received the summons and complaint on behalf of Defendant.  Mr. Brown requested an extension of time to respond to Plaintiff's complaint and intimated a desire to explore settlement.  This evidence demonstrates Mr. Brown "knew what to do with the papers," and otherwise "st[ood] in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service." *Grand Canyon Resort Corp. v. Drive–Yourself Tours, Inc*., 2006 WL 1722314, * 3 (D.Ariz. June 22, 2006).  Accordingly, the Court finds service was proper.

**C.    The *Eitel* Factors**

Having considered the *Eitel* factors as discussed below, the Court finds that default judgment is appropriate as to Plaintiff's claims against Defendant.

**1.    Sufficiency of the Complaint and Substantive Merits**

The Ninth Circuit has suggested that the first two *Eitel* factors -- involving the substantive merits of plaintiff's claim and the sufficiency of the complaint -- require that plaintiff's allegations "state a claim on which the [plaintiff] may recover." *Kloepping v. Fireman's Fund,* 1996 WL 75314 (N.D. Cal. 1996), citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Thus, in order to weigh these two factors the Court must turn to Plaintiff's complaint, which pleads two claims against Defendant: violation of the Fair Debt Collection Practices Act, 18 U.S.C. § 1692 *et seq.* ("FDCPA"); and the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 *et seq.* ("RFDCPA").

The FDCPA was created to protect consumers from unfair and deceptive debt collection practices. *See* 15 U.S.C. § 1692. In order for a plaintiff to recover under the FDCPA, there are three threshold requirements: (1) the plaintiff must be a "consumer"; (2) the defendant must be a "debt

1  collector"; and (3) the defendant must have committed some act or omission in violation of the
2  FDCPA. *See* 15 U.S.C. § 1692a(3) - (6).

3  In order to promote consistent state action, the RFDCPA incorporates the majority of the
4  FDCPA in California Civil Code § 1788.17. Therefore, claims asserted under the FDCPA constitute
5  violations of the RFDCPA. Cal. Civ.Code § 1788.17. A plaintiff who recovers under the FDCPA is
6  entitled to damages under the corresponding section of the RFDCPA. Cal. Civil Code § 1788.30(a).
7  Such recovery is not improper "double recovery." *See* Cal. Civ.Code § 1788.32 ("remedies provided
8  herein are intended to be cumulative ...."); *Adams v. CIR Law Offices, LLP,* 2007 WL 2481550 (S.D.
9  Cal. Aug.29, 2007).

10  Plaintiff's complaint explicitly alleges that Plaintiff is a "consumer" and that Defendant is a
11  "debt collector" under the FDCPA. (Compl. at ¶¶ 4-6.)  Plaintiff alleges Defendant repeatedly
12  contacted Plaintiff's place of work in an attempt to collect an alleged debt, including contacting
13  Plaintiff's supervisor and disclosing the alleged debt. (Compl. at ¶¶ 8-12.)  Plaintiff also alleges
14  Defendant made false threats to Plaintiff, including a threat to file a lawsuit and garnish Plaintiff's
15  wages. (Compl. at ¶¶ 13-14.) Finally, Plaintiff alleges Defendant failed to identify itself as a debt
16  collector in several communications.  Compl. at ¶15.)

17  These allegations, taken as true, constitute violations of the following sections of the FDCPA:
18  1692(b)(2) (disclosing to an individual other than the alleged debtor that the debtor owes any debt);
19  1692 (b)(3) (contacting and communicating with Plaintiff's supervisor on more than one occasion);
20  1692(c)(b)(3) (contacting Plaintiff at Plaintiff's place of employment despite Defendant's knowledge
21  that Plaintiff's employer prohibited such communications); and 1692(e)3(4) (threatening to file a
22  lawsuit or garnish wages when there was no intent to take such action). Moreover, because
23  Defendant's conduct violates the FDCPA, it also violates the RFDCPA. Cal. Civ. Code § 1788.17.
24  Accordingly, plaintiff's allegations "state a claim on which the [plaintiff] may recover." *Danning v.*
25  *Lavine,* 572 F.2d 1386, 1388 (9th Cir. 1978).

26  **2.    The Possibility of a Dispute Concerning Material Facts**

27  The facts of this case are relatively straightforward, and Plaintiff has provided the Court with
28  well-plead allegations and declarations with exhibits in support.  The Court must assume the truth of

7

well-plead facts in the complaint following the clerk's entry of default. Thus, there is no likelihood that any genuine issue of material fact exists. Defendant's failure to file an answer in this case or a response to the instant motion further supports the conclusion that the possibility of a dispute as to material facts is minimal. *See*, *e.g.*, *Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists.").

### 3.     Possibility of Prejudice to Plaintiff

*Eitel* requires that the Court consider whether the Plaintiff would suffer prejudice if default judgment is not entered, and whether such potential prejudice to the Plaintiff militates in favor of granting a default judgment. *Craigslist, Inc. v. Naturemarket, Inc.,* 694 F.Supp.2d 1039, 1054 (N.D.Cal.2010). Here, Plaintiff would face prejudice if the Court did not enter a default judgment. Absent entry of a default judgment, Plaintiff would be without recourse for recovery given Defendant's failure to participate in this litigation in any fashion. Accordingly, this *Eitel* factor favors the entry of default judgment.

### 4.     The Sum of Money at Stake in the Action

*Eitel* instructs "the court [to] consider the amount of money at stake in relation to the seriousness of defendant's conduct." *Eitel,* 782 F.2d at 1472*; see also Truong Giang Corp. v. Twinstar Tea Corp.*, 2007 U.S. Dist. LEXIS 100237, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007) (When the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions and supported by proper documentation and evidence in the record, default judgment is appropriate).

Plaintiff seeks default judgment against Defendant in the amount of $22,970.70. While not a paltry sum, the amount is not enough to outweigh the other factors, all of which favor the entry of default judgment.

### 5.     Whether the Default Was Due to Excusable Neglect

Upon review of the record before the Court, the Court finds that the default was not the result of excusable neglect. Defendant was properly served with the complaint but has not presented a defense or otherwise communicated with the Court. Though the Defendant has made no appearance in

1  this action, its representative contacted Plaintiff's counsel and was informed of the current action.

2  Accordingly, this *Eitel* factor favors the entry of a default judgment.

3        **6.**      **The Strong Policy Favoring Decisions on the Merits**

4        "Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at

5  1472. However, district courts have concluded with regularity that this policy, standing alone, is not

6  dispositive, especially where a defendant fails to appear or defend itself in an action. *See, e.g.,*

7  *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Although

8  the Court is cognizant of the policy favoring decisions on the merits, that policy is unavailable here

9  because Defendant has not responded. This factor does not weigh against entry of default judgment.

10       Upon consideration of the *Eitel* factors, the Court concludes that Plaintiff is entitled to the

11 entry of default judgment against Defendant

12 **C.**      **Damages**

13       Plaintiff's Motion for Default Judgment request statutory damages, actual damages and

14 attorneys' fees. The Court addresses each in turn.

15       **1.**      **Statutory Damages**

16       Plaintiff seeks $2,000.00 in statutory damages under the FDCPA and RFDCPA. Under the

17 FDCPA, a prevailing plaintiff may receive up to $1,000.00 in statutory damages. 15 U.S.C. §

18 1692k(a)(1). Similarly, under the RFDCPA, a prevailing plaintiff may receive up to $1,000.00 in

19 statutory damages. Cal. Civ.Code § 1788.30(b). Remedies under the FDCPA and RFDCPA are

20 cumulative and penalties may be awarded under both statutes for the same act. The FDCPA provides:

21 > This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to
22 > debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency, For
23 > purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this
24 > subchapter.

25

26 15 U.S.C. § 1692n; *see also* Cal. Civ. Code § 1788.32 ("The remedies provided herein are intended to

27 be cumulative and are in addition to any other procedures, rights, or remedies under any other

28 provision of law."); *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1066–68 (9th Cir. 2011).

1  Statutory damages are available without proof of actual damages. *Baker v. G.C. Services Corp.*, 677
2  F.2d 775, 777 (9th Cir.1982).
3       The Court concludes that Plaintiff has established several violations of the FDCPA based on
4  Defendant's improper communications with Plaintiff's employer and threats to take actions which
5  Defendant never had any intent to take, i.e., the filing of a lawsuit and garnishing of Plaintiff's wages.
6  Moreover, the repeated calls suggest that Defendant acted in complete disregard of the FDCPA's
7  requirements. The court finds that the maximum penalty is warranted on the record in this case for
8  both the FDCPA and RFDCPA claims. Accordingly, the Court imposes the maximum statutory
9  damages permitted under the FDCPA and the RFDCPA, and finds that Plaintiff is entitled to statutory
10 damages in the amount of $2,000.00.

11     **2.   Actual Damages**
12     Under the FDCPA, a prevailing plaintiff may be entitled to actual damages as a result of the
13 defendant's failure to comply with the Act. 15 U.S.C. § 1692k(a)(1). While the FDCPA does not
14 define what constitutes "actual damages," it is commonly accepted that damages stemming from
15 emotional distress are compensable under the FDCPA. *See Baker v. G.C. Services Corp.*, 677 F.2d
16 775, 780 (9th Cir.1982) ("The only actual damages that a plaintiff would be likely to incur [under the
17 FDCPA] would be for emotional distress caused by abusive debt collection practices."); *FTC Staff*
18 *Commentary on the Fair Debt Collection Practices Act,* 53 Fed. Reg. 50097, 50109 (Dec. 13, 1988)
19 (noting that actual damages under the FDCPA include "damages for personal humiliation,
20 embarrassment, mental anguish, or emotional distress.")
21     Plaintiff requests $12,800.00 in actual damages. Plaintiff alleges she suffered $6,000.00 in
22 actual damages when Plaintiff was disciplined by her supervisor due to Defendant's repeated
23 collection calls. (Plaintiff's Declaration, Doc. 32, 31-35).  Specifically, Plaintiff alleges she was
24 ineligible to transfer to another department for a two-year period and ineligible to receive the
25 minimum ten-percent salary step increase for department transfer, resulting in a loss of $4,000.00.
26 Plaintiff also alleges she was ineligible for her employer's "Top Cat Incentive Award" for a two-year
27 period, resulting total loss of $2,000.00. *Id.*
28

1    Plaintiff alleges she sustained stress-related illnesses as a result of Defendant's conduct and
2 was treated by a psychiatrist and neurologist. *Id.* Plaintiff states she was prescribed Flexeril for
3 tension and acupuncture for other physiological manifestations of the stress caused by Defendant's
4 conduct. *Id.* Plaintiff alleges she incurred $100.00 in office visit copays and $200.00 in medication
5 copays. *Id.* Plaintiff alleges that as a result of the stress caused by Defendant's collection efforts and
6 the discipline she received at work as a result thereof, Plaintiff missed ten days of work, causing her
7 $1,500.00 in lost pay. Lastly, Plaintiff requests $5,000.00 in emotional distress damages as a result of
8 Defendant's conduct.

9    Having reviewed the factual allegations of the complaint, which the Court must accept as true
10 given the defendant's default, together with Plaintiff's declaration, the Court concludes that Plaintiff is
11 entitled to an award of actual damages.

12    Plaintiff has sufficiently established she is entitled to $12,800.00. Plaintiff's alleged damages
13 relating to lost employment opportunities, medical copays and missed work are not contradicted and
14 appear reasonable in light of Defendant's conduct. Moreover, Plaintiff's request for emotional distress
15 damages are at the low end of emotional distress damages awarded in FDCPA cases by district courts
16 in the Ninth Circuit. *See e.g., Kajbos v. Maximum Recover Solutions, Inc.,* 2010 WL 2035788, at *3
17 (D. Ariz. May 20, 2010) (Relying on the plaintiffs' "fairly conclusory declarations," the court awarded
18 $5,000 in actual damages per plaintiff under the FDCPA as a result of the plaintiffs' emotional distress
19 and mental anguish in the form of fear of answering the telephone, sleeplessness, feelings of
20 hopelessness, pessimism, and nervousness which impacted their jobs, their personal relationships, and
21 created marital instability); *Panahiasl v. Gurney,* 2007 WL 738642 (N.D. Cal. 2007) (awarding to one
22 plaintiff $50,000 in actual damages due to emotional distress arising from FDCPA violations that
23 caused her to suffer embarrassment, fear, anger, panic, humiliation, nervousness, crying fits, difficulty
24 eating and sleeping, and diarrhea); *Brablec v. Paul Coleman & Associates, P.C.,* 2010 WL 235062
25 (E.D. Cal. 2010) (awarding a consumer $25,000 in actual damages due to emotional distress stemming
26 from FDCPA violations). *Cf. Hartung v. J.D. Byrider, Inc.*, No. 1:08–cv–00960 AWI GSA, 2009 WL
27 1876690, at *9–10 (E.D. Cal. June 26, 2009) (finding defendant's actions egregious but recommending
28

11

that plaintiff's request for $50,000 in actual damages for emotional distress be reduced to $25,000 because plaintiff was exposed to defendant's actions for a limited period of time).

### 3. Plaintiff's Attorney Fees

Plaintiff's counsel ("Counsel") has asked for $7,657.00 in attorneys' fees and $513.70 costs.[1] The request is based on 21.2 hours at a rate of $325.00 an hour and paralegal fees based on 5.9 hours at a rate of $130.00 per hour.

#### i. Legal Standard For An Award of Attorney Fees In FDCPA Cases

"[I]n the case of any successful action to enforce ... [liability under the FDCPA], the costs of the action, together with the reasonable attorney's fee as determined by the court" will be included in the amount of the debt collector's liability. 15 U.S.C. § 1692k(a)(3). An award of attorneys' fees pursuant to section 1692k(a)(3) is mandatory. *See Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir.1991) ("[A]ttorney's fees should not be construed as a special or discretionary remedy; rather, the [FDCPA] mandates an award of attorney's fees ...").

In *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court outlined the proper method for determining reasonable attorneys' fees using the lodestar method. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id*. at 433. There is a strong presumption that the lodestar formula represents a reasonable fee. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). In addition, the court will deduct any hours not reasonably expended, such as those that are "excessive, redundant, or otherwise unnecessary." *Id.* at 434.

#### ii. Counsel's Requested Number of Hours

The Court must determine whether the requested number of hours is greater than, less than or the same number of hours that reasonably competent counsel would have billed. *Yahoo!, Inc*., 329 F.Supp.2d at 1184. If the requested number of hours is greater than the number of hours reasonably competent counsel would have billed, then the court should reduce the requested number of hours

---

[1] These costs include the filing fee, Federal Express expenses and personal service fees. The Court finds these costs were reasonably incurred and awards Plaintiff costs in the amount of $513.70.

12

1  accordingly. *See Hensley*, 461 U.S. at 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (describing the court's duty
2  to eliminate hours that are "excessive, redundant, or otherwise unnecessary").

3  Here, the Court groups Counsel's hours into two categories: all activities prior to Plaintiff's
4  attempt to secure a default judgment; and Plaintiff's efforts to obtain a default judgment. Prior to
5  seeking a default judgment, Counsel claims to have expended 5.9 hours in pre-default litigation
6  activity, including initial case investigation and the drafting and filing of Plaintiff's complaint.
7  Plaintiff additionally claims Counsel's paralegal expended 3.9 hours in pre-default litigation activity.
8  The Court finds these hours were reasonably expended.

9  Counsel claims to have expended 15.3 hours seeking a default judgment, including drafting
10 and filing four motions for default judgment and a motion for reconsideration. Plaintiff also argues
11 Counsel's paralegal expended 2 hours during this time.  The Court does not believe "reasonably
12 competent counsel" would have needed four bites at default judgment before addressing the Court's
13 service concerns. "Fairness dictates that fees not be awarded for time taken to address and correct the
14 avoidable deficiencies of plaintiff's previously-denied motion for default judgment." *Cuevas v. Check*
15 *Resolution Services*, 2013 WL 2190172 (E.D. Cal. 2013).  Accordingly, the Court recommends
16 Counsel's hours be reduced by eight (8) hours, which Counsel represents were expended "revising"
17 the third and fourth motions for default judgment.  (Doc. 32, p.38-39.)  Similarly, the Court
18 recommends Counsel's paralegal's hours be reduced by 1.6 hours for tasks related to the third and
19 fourth motions for default judgment.

20 Accordingly, the Court finds Counsel reasonably expended 13.2 hours, and Counsel's
21 paralegal reasonably expended 4.3 hours.

22         **iii.**    **Plaintiff's Hourly Fee Request**

23 "Reasonable fees are  ...  to be calculated according to the prevailing market rates in the
24 relevant community, with close attention paid to the fees charged by lawyers of reasonably
25 comparable skill, experience, and reputation."  *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th
26 Cir. 2007). Generally, the relevant community is the forum in which the district court sits. *Yahoo!, Inc.*
27 *v. Net Games, Inc.*, 329 F.Supp.2d 1179 (N.D. Cal. 2004) ("the average market rate in the local legal
28

community as a whole is a better approximation of the hourly rate that would be charged by reasonably competent counsel than the actual billing rate charged by a single attorney.")

Plaintiff's counsel requests an hourly rate of $325.00. Plaintiff's Counsel argues his hourly rate is reasonable based upon: (1) Counsel's experience, reputation and ability; (2) the novelty and difficulty of the legal issues presented; (3) the fees customarily charged in this locality for similar legal services; and (4) the amount of fees in proportion to the value of the services performed. Plaintiff also claims Counsel's paralegal's fees are reasonable for the same reasons.

The evidence submitted by Plaintiff does not justify Counsel's hourly rate of $325.00. First, the issues before the Court are not particularly difficult or novel. Plaintiff's factual contentions were automatically established on default judgment. Those factual allegations fit squarely within the purview of conduct prohibited by the FDCPA and RFDCPA.

Second, hourly rates in excess of $300.00 are not the prevailing rate in the Eastern District of California for FDCPA practitioners. The Court's review of some of the most recent attorney fee awards in FDCPA cases indicate that the most common hourly rate awarded to plaintiff's counsel in FDCPA cases is $250. *See, e.g., Hartung v. J.D. Bryider, Inc.,* 2009 WL 1876690 (E.D. Cal., 2009) ($250); *Lowe v. Elite Recovery Solutions*, 2008 WL 324777 at *5 (E.D.Cal. Feb.5, 2008) ($250); *Valero v. Bryant, LaFayette and Associates, LLC*, 2011 WL 1438436 (E.D.Cal. 2011) ($250); *Brablec v. Paul Coleman & Associates, P.C.*, 2010 WL 23062 (E.D.Cal., 2010) ($250); *Branco v. Credit Collection Services, Inc.* 2011 WL 6003877 (E.D. Cal. 2011) ($275).

While the Court has identified cases in which FDCPA practitioners were awarded $300–$315 hourly rates, *see e.g., Costa v. National Action Financial Services*, 2008 WL 1925235 (E.D. Cal., 2008) ($315); *Johnson v. JP Morgan Chase Bank, N.A.,* 2010 WL 4977648 (E.D. Cal., 2010) ($300), those awards are outliers, not the prevailing rates. Conversely, assuming these larger fee awards are properly viewed as the upper-end of a sliding scale of rates, such rates would be reserved for those FDCPA practitioners with the highest degree of skill, experience and reputation. However, Counsel's repeated failure to follow the Court's admonitions concerning service of process convinces the Court that Counsel's hourly rate should not be set at the upper end of this scale. As such, the Court establishes Plaintiff's hourly rate, based on prevailing rates in the community comparable to other

14

FDCPA practitioners of similar skill, experience and reputation, at $250. Additionally, the Court finds Plaintiff's requested rate for Counsel's paralegal - $130.00 – to be reasonable. *See, Cuevas v. Check Resolution Services,* 2013 WL 2190172 (E.D. Cal. 2013) (finding a paralegal's hourly rate of $130.00 reasonable in an FDCPA case).

Accordingly, the Court recommends a total fee award in the amount of $4,372.70, broken down as follows: an award of fees for Plaintiff's Counsel in the amount of $3,300.00 (13.2 hours x $250.00 per hour); an award of fees for Counsel's paralegal in the amount of $559.00 (4.3 hours x $130 per hour); and an award of costs in the amount of $513.70.

## RECOMMENDATION

Based on the foregoing, the Court RECOMMENDS as follows:

1. Plaintiff's Motion for Default Judgment against Defendant TCM FINANCIAL SERVICES, LLC be GRANTED IN PART;

2. Judgment be entered in favor of Plaintiff HEATHER ESGET and against Defendant TCM FINANCIAL SERVICES, LLC in the amount of $14,800.00 in total damages;

3. Plaintiff be awarded attorneys' fees and costs in the amount of $4,372.70;

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local Rule 304. Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C).

The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **January 22, 2014**         /s/ *Barbara A. McAuliffe*
                                       UNITED STATES MAGISTRATE JUDGE